**In re Mildred Ellen PRESSIMONE, Debtor.**

**Mildred Ellen PRESSIMONE and Robert E. Littlefield, Jr., Trustee, Plaintiffs-Appellees,**

v.

**INTERNAL REVENUE SERVICE, Defendant-Appellant.**

**Nos. 82–BK–12477, 83–CV–281.**

United States District Court,
N.D. New York.

April 17, 1984.

Kauffman & LaPointe, Schenectady, N.Y., for plaintiff Mildred Pressimone; Robert M. Cohen, Ballston Lake, N.Y., of counsel.

Littlefield & Littlefield, Albany, N.Y., for plaintiff Littlefield, Trustee; Robert E. Littlefield, Jr., Schenectady, N.Y., of counsel.

Frederick J. Scullin, Jr., U.S. Atty., Syracuse, N.Y., Glenn L. Archer, Jr., Asst. Atty. Gen., Department of Justice, Washington, D.C., for I.R.S.; D. Patrick Mullarkey, Sheri Moore Humphrey, Washington, D.C., of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

This is an appeal by the Internal Revenue Service, defendant below, from an order of the Bankruptcy Court for the Northern District of New York, Hon. Justin J. Mahoney, B.J., restraining the IRS from any and all collection efforts against the husband of the debtor, Mildred Ellen Pressimone, with respect to certain jointly-owed income tax obligations. For the reasons set forth herein, that order is rejected, and the proceeding is dismissed.

## BACKGROUND

Mrs. Pressimone, a stenographer for the State Tax Department, filed a petition under Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 1301 *et seq.* on November 15, 1982. The petition listed debts to 10 creditors, including a priority debt of $1,464.00 to the IRS. On January 19, 1983, the bankruptcy court confirmed a rehabilitation plan proposed by the debtor, requiring her to pay to the trustee $110.00 per month for 60 months for distribution to her creditors. Pursuant to the plan, the IRS and the New York State Tax Department are to be paid in full before any other creditors are paid.

Subsequently, the Chapter 13 trustee sought from the bankruptcy court an order enjoining the IRS to cease and desist all collection efforts against the debtor's husband for joint tax obligations payable under the Chapter 13 plan, and to comply fully with 11 U.S.C. § 1301, which stays collection actions against certain co-debtors. The IRS had previously served a Notice of Levy on Wages, Salary, and Other Income (Form 668–W) on the employer of the debtor's husband in an effort to collect from him an amount of $916.56, the Pressimones' joint income tax liability for the years 1979 and 1981.

Judge Mahoney issued an Order on January 31, 1983, granting the relief requested. The order states, in pertinent part,

The Court having concluded that garnishment or other collection procedures undertaken against the husband during the operative period of the Chapter 13 plan which provides for full payment of the Internal Revenue Service debt imposes an unnecessary administrative burden upon the estate; and

The Court having further concluded that duplication of the Chapter 13 payment any any contemporaneous collection payment is not consonant with the spirit and policy of Chapter 13 which is to encourage debtor payment without outside pressure and harassment,

NOW, acting pursuant to powers conferred by Section 105 of the Code, on motion of Robert E. Littlefield, Jr., Chapter 13 Standing Trustee, it is

ORDERED that the Internal Revenue Service cease and desist from all further collection efforts against the husband of the debtor, Mildred E. Pressimone, and it is further

ORDERED that the Internal Revenue Service fully comply with the provisions of 11 U.S.C. 1301.

## DISCUSSION

The IRS raises four principal arguments on appeal: (1) the debtor and trustee lack standing; (2) the action is barred by the sovereign immunity of the United States; (3) the action is barred by the Tax Injunction Act, 26 U.S.C. § 7421(a); and (4) the statutory basis for the cease and desist order, 11 U.S.C. § 1301, is inapplicable to the collection of tax liabilities.

### A. *Standing*

■ Since the income tax which the IRS is seeking to collect is based upon joint returns filed by Mr. and Mrs. Pressimone, their liability with respect to the tax is "joint and several," 26 U.S.C. § 6013(d)(3), and can be collected from either spouse. The IRS has, in this instance, elected to collect the debt from the husband of the debtor, who has not filed any Title 11 proceeding. The IRS therefore contends that the debtor lacks standing to maintain this proceeding, inasmuch as she "is seeking, in effect, to enjoin the collection of taxes from a taxpayer other than herself." *Appellant's Brief* at 3. Primary reliance is placed upon *Simon v. Kentucky Welfare Rights Organization*, 426 U.S. 26, 28, 96 S.Ct. 1917, 1919, 48 L.Ed.2d 450 (1976), wherein the Supreme Court held that organizations which advocated the interests of low-income persons lacked standing to challenge an IRS Revenue Ruling that allegedly injured such persons.

As *Simon* emphasizes, when standing is placed in issue the central inquiry is "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." 426 U.S. at 38, 96 S.Ct. at 1924, *quoting Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2204–2205, 45 L.Ed.2d 343 (1975) (emphasis in original). In this instance, that inquiry must be answered affirmatively. Plaintiffs contend—indeed the bankruptcy judge expressly found—that the IRS' efforts to collect the tax from the husband would impose a burden on the estate of the debtor, and subject her to pressure and harassment. In short, plaintiffs have standing to challenge the IRS collection activity because such activity jeopardizes the Chapter 13 recovery plan. *See In re Jon Co., Inc.*, 30 B.R. 831 (D.C.D. Colo.1983) (debtor has standing to challenge IRS enforcement efforts against officers and directors of debtor where enforcement would threaten debtor's ability to reorganize under Chapter 11).

### B. *Sovereign Immunity*

■ Reciting the general principle that the United States is immune from suit except to the extent that it has specifically waived its sovereign immunity, *see United States v. Shaw*, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888 (1940), the IRS contends that it has not waived sovereign immunity in

this instance and that the instant action is therefore barred.

As plaintiffs point out, the Bankruptcy Code contains an express waiver of sovereign immunity in 11 U.S.C. § 106, which provides as follows:

§ 106. Waiver of sovereign immunity (a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title [11 USCS §§ 1 *et seq.*] that contains "creditor", "entity", or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

Although S106(a) and (b) are inapplicable, inasmuch as the debtor is neither seeking to assert a counterclaim or setoff against the governmental unit, *see In Re Adirondack Ry. Corp.*, 28 B.R. 251 (Bkrtcy.N.D. N.Y.1983), subsection (c) supplies a waiver of immunity with respect to the instant action. The bankruptcy court determined an issue arising under 11 U.S.C. § 1301, which is "a provision of this title that contains 'creditor'". That determination therefore applies to a governmental unit notwithstanding any assertion of sovereign immunity.

The legislative intent of subsection (2) appears in accord with this construction. The broad waiver of immunity in subsection (c) was specifically intended to codify *In re Gwilliam*, 519 F.2d 407 (9th Cir.1975) and *In re Dolard*, 519 F.2d 282 (9th Cir. 1975), decisions which permitted the bankruptcy courts to determine the amount and

dischargeability of tax liabilities owed by the debtor notwithstanding the IRS assertion of sovereign immunity. 124 Cong.Rec. H 11091 (Sept. 18, 1978), *reprinted in* 11 U.S.C.S. § 106 at 64. Although the instant action does not involve a determination of the amount of the debtor's tax, but rather, the manner in which the debtor's joint tax liability may be collected, it nevertheless falls within the broad ambit of the waiver provided by subsection (c). *See generally* 2 *Collier on Bankruptcy* ¶ 106.04 (15th ed. rev. 1983).

## C. *Tax Injunction Act*

The IRS' next contention is that the bankruptcy court order enjoining it from collecting taxes is expressly barred by the Anti-Injunction Act, 26 U.S.C. § 7421(a), which provides in pertinent part:

§ 7421. *Prohibition of suits to restrain assess collection.*

(a) *Tax*... [N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

The purpose of the Act is to serve "the Government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference," *Bob Jones University v. Simon*, 416 U.S. 725, 736, 94 S.Ct. 2038, 2046, 40 L.Ed.2d 496 (1974) and to "require that the legal rights to the disputed sums be determined in a suit for a refund." *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962).

The instant adversary proceeding plainly falls within the literal scope of the Anti-Injunction Act. Even though the plaintiffs are not herein disputing the amount of the tax or seeking to forever prevent its collection, they do seek to enjoin the IRS to collect such tax in the manner prescribed by the Chapter 13 plan. The suit is therefore one "for the purpose of restraining ... collection," since such language prohib-

its "*all* injunctive suits against the tax collector." *South Carolina v. Regan,* — U.S. —, —, 104 S.Ct. 1107, 1119, 79 L.Ed.2d 372 (1984) (O'Connor, J., concurring) (emphasis added).

The Supreme Court has approved only two judicially-created exceptions to the Act's proscription. The first applies in cases where the plaintiff can demonstrate irreparable harm and a *certainty* of success on the merits, *Williams Packing, supra;* the second applies in cases where the plaintiff has no alternative legal means of challenging the tax. *South Carolina v. Regan, supra.* Neither exception applies to the instant case, since the validity of the assessment is not challenged.

There are, however, a number of court decisions which hold that the Anti-Injunction Act does not bar the bankruptcy court from restraining the IRS from assessing or collecting taxes where such order is necessary "to protect its jurisdiction, administer the bankrupt's estate in an orderly and efficient manner and fulfill the policy of the Bankruptcy Act." *Bostwick v. United States,* 521 F.2d 741, 744 (8th Cir.1975). *E.g., In re Jon Co., Inc., supra,* 30 B.R. 831 (D.C.D.Colo.1983); *In re H & R Ice Co., Inc.,* 24 B.R. 28 (Bkrtcy.W.D.Mo.1982). Other courts have taken the opposite view, and have held that the proscription of the Act applies to bankruptcy court proceedings as it does to all other courts. *E.g., Matter of Becker's Motor Transp., Inc.,* 632 F.2d 242 (3d Cir.1980); *In re County Wide Garden Center, Inc.,* 25 B.R. 203 (Bkrtcy.S.D.N.Y.1982). There is apparently no prior Court of Appeals or district court decision on the issue in this circuit.[1]

The competing interests at stake in this dispute are clear and weighty. On one hand, Congress enacted the Anti-Injunction Act because it considered it vital for the government "to assess and collect taxes alleged to be due without judicial intervention...." *Williams Packing, supra,* 370

U.S. at 7, 82 S.Ct. at 1129. On the other hand, Congress enacted Chapter 13 of the 1978 Bankruptcy Code because of the public and private interest in enabling individuals with regular incomes to adjust their debts and obtain a fresh start by means of an appropriate repayment plan rather than a liquidating bankruptcy. See *5 Collier on Bankruptcy* ¶ 1300.2 (rev. 1983). The question presented here is which interest Congress intended to subordinate to the other.

In the first instance, it is necessary to consider the two sources of authority the bankruptcy court invoked for its order, 11 U.S.C. § 105(a) and § 1301, to determine whether either reveals a congressional intent to override the Anti-Injunction Act. Since § 1301 is the more specific provision, it is appropriately considered first. That section provides, in pertinent part:

> § 1301. *Stay of action against codebtor*
>
> (a) .... [A]fter the order for relief under this chapter [11 U.S.C. §§ 1301 *et seq.*], a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt....

The purpose of the provision, as stated in the House Judiciary Report, is

> to protect a debtor operating under a chapter 13 repayment plan case by insulating him from indirect pressures from his creditors exerted through friends or relatives that may have cosigned an obligation of the debtor. H.Rep. No. 95–595 to accompany H.R.8200, 95th Cong., 1st Sess. 426 (1977), *reprinted in* 11 U.S.C.S. § 1301 at 450, U.S.Code Cong. & Admin. News 1978, at 5787, 6381.

Although the broad purpose of this section is arguably served by the bankruptcy court's order, this court's inescapable conclusion is that the section is inapplicable by

---

**1.** The Court of Appeals, in *In re Johnson,* 442 F.2d 281 (2d Cir.1971) acknowledged but did not answer the question of whether the Anti-Injunction Act prohibited the bankruptcy referee

from enjoining the United States from taking action to collect, from a Chapter 11 debtor, post-petition interest on a federal tax claim.

its terms. The statutory stay only applies to "a consumer debt," which is defined in 11 U.S.C. § 101(7) as a "debt incurred by an individual primarily for a personal, family, or household purpose." Plaintiffs' argument that the debtor's income tax liability is "a consumer debt" because it arises from her personal wages to be utilized for consumer purposes is not convincing. Tax liability is incurred in the course of *earning* income, not in the course of consumptive activity. In short, there is no basis for concluding that a Chapter 13 debtor's income tax liability is "a consumer debt" within the meaning of 11 U.S.C. § 1301(a). Since the section is unavailable as a source of authority for the order of the bankruptcy court, it is unnecessary to reach the question of whether § 1301(a) overrides the Anti-Injunction Act.

The second, more general source of authority relied upon by the bankruptcy court for its injunction is 11 U.S.C. § 105(a), which states:

§ 105.  *Power of court*

(a) The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

This section, together with its jurisdictional correlative, 28 U.S.C. § 1481, invests the bankruptcy court with the power and authority to issue a wide range of injunctive relief. *2 Collier on Bankruptcy* ¶ 105.02 (rev. 1983). The challenged injunction is plainly an order "appropriate to carry out the provisions" of Chapter 13, and is therefore authorized by § 105(a).

Nevertheless, nothing in the general language of § 105(a) indicates that Congress intended it to supercede the proscription of the Anti-Injunction Act; nor has this court located any indication of such intent in the legislative history of the Bankruptcy Reform Act of 1978 (or in the Bankruptcy Tax Act of 1980, Pub.L. No. 96–589). This omission indicates that Congress did not intend, by enacting § 105(a), to supercede 26 U.S.C. § 7421(a). *Cf. In re Petrusch*, 667 F.2d 297 (2d Cir.1981), *cert. denied*, 456 U.S. 974, 102 S.Ct. 2238, 72 L.Ed.2d 848 (1982), *aff'g* 14 B.R. 825 (D.P.N.D.N.Y. 1981) (McCurn, J.).

*In re Petrusch* is particularly instructive as to the resolution of this issue. In that case, a Chapter 13 debtor obtained an injunction from the Bankruptcy Court restraining a labor union from picketing his place of business. On appeal, this court held that the injunction was proscribed by the Norris-LaGuardia Act, 29 U.S.C. § 101, notwithstanding the applicability of the Automatic Stay section of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 362. In affirming that decision, the Court of Appeals reasoned as follows:

This appeal ... presents the issue of whether the Automatic Stay section of the Bankruptcy Reform Act of 1978 (11 U.S.C. § 362), upon which the Bankruptcy Judge relied, supercedes *pro tanto* the historic Norris-LaGuardia Act, 29 U.S.C. § 101....

"The well established power of the reorganization court to issue orders necessary to conserve the property in its custody must be exercised within the scope of a jurisdiction which is limited by the broad and explicit language of the Norris-LaGuardia Act." *In re Third Ave. Transit Corp*.... 192 F.2d 971, 973 (2d Cir.1951)....

Nowhere in the legislative history of the Bankruptcy Reform Act of 1978 ... is any reference made to the Norris-LaGuardia Act. Such omissions are to us self-evident proof that Congress never intended to supercede or transcend it, since we cannot believe the Norris-LaGuardia Act was to be superceded *sub silento*.

Concern for the preservation of estates in bankruptcy and prevention from interference in their *status quo* has had a long history and effective remedies bottomed on the concept of *custodia legis*, but with exceptions and limitations.... Congress, pursuant to its constitutional powers, carved out an exception in labor disputes by withdrawing jurisdiction of all United States courts, Article III, Sec. 1. 667 F.2d 298–300.

Such reasoning necessarily leads to a similar result in this case. Although Congress invested bankruptcy courts with the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of title 11, 11 U.S.C. § 105(a), that grant of authority cannot, under normal rules of construction, be deemed to supercede, *sub silento*, the statutory caveat that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person...." 26 U.S.C. § 7421(a).

Courts that have reached the opposite determination have expressed a laudable concern for the rehabilitation of debtors, and for the need to allow the bankruptcy court broad latitude in accomplishing the objectives of title 11. *E.g., Bostwick, supra, In re Jon Co., Inc., supra.* However, in so doing such courts have independently weighed the competing policy objectives at stake, thereby substituting their own judgment for that of Congress. *See, e.g., In re Jon Co., supra,* 30 B.R. at 834 ("I am asked to make a policy choice between the government's need to collect taxes and the orderly administration of the Bankruptcy Act."). This court, however, concurs with the view expressed by the Third Circuit, that an exemption from the Anti-Injunction Act for situations such as this must be created by Congress, not courts. *Matter of Becker's Motor Transp., Inc., supra,* 632 F.2d at 246. As that court stated:

> However persuasive the argument against application of § 7421(a) to bankruptcy court adjudications may be, we believe that a bankruptcy court exemption cannot be fashioned without contravening congressional intent. Although

there may be some merit in permitting the policy behind the Bankruptcy Act to outweigh the rationale that underpins the anti-injunction rationale, such argument should be addressed to Congress. *Id.* at 246.

Accordingly, the court holds that insofar as the bankruptcy court order restraining IRS collection efforts is based upon 11 U.S.C. § 1301 it is in excess of such statutory authority; and insofar as it is based upon 11 U.S.C. § 105(a), it is prohibited by the Anti-Injunction Act, 26 U.S.C. § 7421(a).[2] The order of the bankruptcy court is therefore rejected pursuant to this district's *Emergency Resolution* (e)(2)(B),[3] and the proceeding is dismissed.

IT IS SO ORDERED.

---

**2.** Although it may not be restrained by any court, it is hoped that the IRS would exercise self-restraint in situations, such as this one, where its collection efforts may disrupt a fair recovery plan.

**3.** As a result of the Supreme Court decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), which undermined the independent jurisdiction of the bankruptcy court, this district adopted an *Emergency Resolution,*

dated December 24, 1982, which provides, in pertinent part:

(e) District Court Review

....

(2)(B) In conducting review, the district judge ... may accept, reject, or modify, in whole or part, the order or judgment of the bankruptcy judge.... At the conclusion of the review, the district judge shall enter an appropriate order or judgment.