**In re Willie J. STOVALL, Debtor.**

**Bankruptcy No. 96–14755–SSM.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

May 16, 1997.

Klinette H. Kindred, Falls Church, VA, for Debtor.

Dennis R. Bates, Senior Asst. County Atty., Fairfax County Attorney's Office, Fairfax, VA, Gerald M. O'Donnell, Alexandria, VA, Chapter 13 Trustee.

## MEMORANDUM OPINION

STEPHEN S. MITCHELL, Bankruptcy Judge.

This matter is before the court on the debtor's motion for sanctions against a local tax authority for violating the co-debtor stay and the automatic stay.[1] A hearing was held on April 29, 1997, at which oral argument was presented. At the conclusion of the hearing the court took under advisement the issue of whether the co-debtor stay of § 1301, Bankruptcy Code, is violated when a taxing authority places a lien on a co-debtor's bank account for unpaid personal property taxes on the debtor's automobile.[2] For the reasons stated herein, the court concludes

---

1. The primary focus of the debtor's motion—and the entire thrust of the arguments at the hearing on April 29, 1997—related to the co-debtor stay of § 1301, Bankruptcy Code. In the motion, however, the debtor alleged that the garnishment of his mother's bank account also violated the automatic stay of § 362(a), Bankruptcy Code, because some portion of the funds in that account belonged to the debtor, who had deposited them there because he did not have an account in his own name. *See, Maryland Nat'l Mortgage Corp. v. Burns (In re Burns)*, 112 B.R. 763 (Bankr. E.D.Va.1990) (Tice, J.) (automatic stay applied to foreclosure where debtor had beneficial interest in real estate titled in a third person's name). At the hearing, however, the debtor presented no evidence in support of the assertion that he was the owner of funds in the account, and the court therefore treats the argument as having been abandoned.

2. At the hearing, there was some confusion as to whether the debtor's mother was merely a co-signer on the promissory note or whether the automobile was titled jointly in both the debtor's and her names. In reviewing the case file, the court notes that a copy of the certificate of title is attached as an exhibit to a motion for relief from the automatic stay, filed on September 20, 1996, by the lien holder of the automobile at issue here,

that a debt for personal property tax is not a "consumer debt," and that the co-debtor stay was therefore not violated by the enforcement of the tax lien against the co-debtor's bank account.

## Facts

The debtor in this case, Willie J. Stovall, filed a voluntary petition under Chapter 13 of the Bankruptcy Code in this court on August 30, 1996. On his schedules, he listed as one of his assets a 1991 Ford Thunderbird automobile, worth $6,500, and subject to a lien in favor of Ford Motor Credit in the amount of $12,057. The debtor also listed Fairfax County Department of Taxation ("Fairfax County") as an unsecured priority creditor in the amount of $684. Although there is no explanation in the schedules as to the basis of this debt, attachments to the County's proof of claim reflect that the debt is for personal property taxes on the debtor's automobile for the years 1991, 1992, and 1996.[3] On schedule H ("Codebtors") the debtor lists his mother, Annie Stovall, as liable with him on his debt to Ford Motor Credit. She is not listed, however, as being liable on the debt owed Fairfax County. The court assumes, however, that, as a co-owner of the car, she is jointly liable with the debtor for the personal property taxes on the car and therefore qualifies as a co-debtor for purposes of § 1301, Bankruptcy Code. See Va.Code Ann. § 58.1–3015 ("If property be owned by a person sui juris, it shall be taxed to him.").

The original plan filed by the debtor was not confirmed, but the debtor filed a modified plan on October 22, 1996, which was confirmed on December 16, 1996. That plan, which requires the debtor to pay the chapter 13 trustee $325.00 per month for 24 months, followed by $365.00 per month for 36 months, provides for 100% payment on unsecured claims. Relevant to the present controversy, the plan treats the claim of Fairfax County in the amount of $898[4] as a priority claim and provides for its payment in full by deferred payments over the 60–month duration of the plan. The motion presently before the court asserts that, subsequent to confirmation of the plan, Fairfax County placed a tax lien on the co-debtor's checking account with First Virginia Bank for the unpaid personal property taxes, and that on March 10, 1997, $489.55 from the account was paid over to Fairfax County.[5] As noted above, the debtor is not a legal owner of the account, although he alleges that he regularly "deposits a portion of his earnings in the ... account in order to accumulate the funds necessary to pay the Trustee under his chapter 13 plan each month."[6] The debtor seeks $489.55 in actual damages and $175 in punitive damages (the amount of attorney's fees expended by the debtor in bringing this motion), along with return of the $489.55 seized and an order that Fairfax County cease violating the co-debtor stay.

## Conclusions of Law and Discussion
### A.

The narrow issue before the court is whether a debt for unpaid personal property taxes is a "consumer debt" within the meaning of § 1301, Bankruptcy Code. If so, there can be little doubt that placing a lien against the co-owner's bank account to collect the tax would be a violation of the co-debtor stay imposed by § 1301. Debtor asserts that the term "consumer debt" encompasses a debt for a personal property tax since the tax arises from the ownership of property acquired and used for personal, family, or household purposes.[7] Fairfax County, on the

---

Ford Motor Credit Corporation. The certificate of title reflects that the debtor and his mother own the automobile jointly with right of survivorship.

3. Fairfax County filed a priority proof of claim in the amount of $710.35. No objection to this proof of claim has been filed.

4. The County's proof of claim, filed December 23, 1996, only asserts a claim of $710.35.

5. The court notes that Fairfax County did not controvert any of the facts as alleged by the debtor in its response. Rather, it contends solely

that the debt at issue here, personal property tax, is not a "consumer debt" within the meaning of § 1301, thus making the co-debtor stay inapplicable.

6. Why this should be necessary is not clear, since there is an outstanding wage order requiring the debtor's employer to remit the plan payments directly to the chapter 13 trustee.

7. No evidence was presented as to the actual use of the automobile, but Fairfax County does not appear to dispute that the automobile is owned for personal or family use.

other hand, argues that since a tax debt is involuntarily imposed for a public purpose, it does not qualify as a consumer debt within the meaning of the Bankruptcy Code.

## B.

■ The general rule is that the automatic stay in a bankruptcy case protects only the debtor and not parties that are liable with the debtor, such as co-makers and guarantors. *Credit Alliance Corp. v. Williams,* 851 F.2d 119 (4th Cir.1988). In Chapter 13 cases, however, Congress has provided a narrow exception to this rule by creating a stay of actions to collect a consumer debt from a person who is jointly liable on the debt with the debtor. Specifically, § 1301(a), Bankruptcy Code, states in relevant part:

> Except as provided in subsections (b) and (c) of this section, after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor, or that secured such debt[.]

This so-called "co-debtor" stay was intended to insulate the debtor in bankruptcy from the indirect pressures of friends and close relatives who are liable with the debtor and have been subject to collection activities by creditors to enforce or collect the joint debt. *See* 8 Collier's on Bankruptcy, ¶¶ 1301.01, 1301.LH (Lawrence P. King ed., 15th ed. rev., 1996). The co-debtor need not be in bankruptcy himself or herself in order to take advantage of the stay; it applies solely by operation of law when the party jointly liable on the consumer debt files for protection under chapter 13 of the Bankruptcy Code. Of most relevance to the motion before the court is that the co-debtor stay applies only to "consumer debts" as that term is defined in the Code. As succinctly stated by the legislative history,

> The automatic stay under this section pertains only to the collection of a consumer debt, defined by section 101(7) [now § 101(8) ] of this title to mean a debt incurred by an individual primarily for a personal, family, or household purpose. Therefore, not all debts owed by a chapter

13 debtor will be subject to the stay of the codebtor.

H.R. Rep. No 595, 95th Cong., 1st Sess. 426 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6381. Section 101(8), Bankruptcy Code defines a "consumer debt" as a "debt incurred by an individual primarily for a personal, family, or household purpose." The term "consumer debt" is used throughout the Code, fifteen times in all,[8] and the court, as it must, begins with the assumption that the term has the same meaning throughout the statute. *See United States Nat'l Bank v. Independent Ins. Agents of Am., Inc.,* 508 U.S. 439, 460, 113 S.Ct. 2173, 2185, 124 L.Ed.2d 402 (1993). Accordingly, it is proper to examine other sections in which the term "consumer debt" is used as an aid in determining its meaning and application in § 1301. *In re Runski,* 102 F.3d 744, 746–47 (4th Cir.1996).

The Fourth Circuit recently interpreted the language of § 101(8) in the context of determining whether a debtor could redeem certain equipment from a secured creditor's lien under § 722, Bankruptcy Code. The court stated:

> In determining whether debt is for "personal, family, or household purposes" under § 101(8), courts look to the purpose for which the debt was incurred. And, courts have concluded uniformly that debt incurred for a business venture or with a profit motive does not fall into the category of debt incurred for "personal, family, or household purposes." In short, debt incurred for a business venture is not "consumer debt" because it is not "debt incurred by an individual primarily for a personal, family, or household purpose."

> \*   \*   \*   \*   \*   \*

> *[T]he proper course in deciding whether personal property is "intended primarily for personal, family, or household use,"* and thus is subject to redemption, *is to examine the purposes for which the property is used.* Because the property at issue is used solely for the operation of a business, it is not redeemable under § 722.

---

8. *See* Bankruptcy Code §§ 101(8); 342(b); 521(2); 523(a)(2)(C); 523(d); 524(c)(6)(B); 524(d)(2); 547(c)(8); 707(b); 722, 1201(a); 1222(b)(1); 1301(a); 1305(a)(2); and 1322(b)(1).

*Id.* at 747 (emphasis added); *see also Harris v. Margaretten & Co. (In re Harris),* 203 B.R. 46, (Bankr.E.D.Va.1994) (Tice, J.) (holding that the "purpose of the debt determines whether a debt is a consumer debt; consequently, a debt incurred to purchase an individual's residence is a consumer debt even though it is secured by a deed of trust on the realty"). *But see Gibbs v. Randolph (In re Randolph),* 28 B.R. 811, 813 (Bankr.E.D.Va. 1983) (Shelley, J.) ("The legislative history which accompanies [section 101(8) ] indicates that the definition of 'consumer debt' ... does not include a debt to any extent the debt is secured by real property." (Citing S. Rep. 95–989, H.R. Rep. No 95–595, 95th Cong., 1st Sess. (1977–78), *reprinted in* 1978 U.S.C.C.A.N. 5963)).

The Fourth Circuit has defined "consumer debt" in a similar manner in the context of § 707(b), Bankruptcy Code, which permits a bankruptcy court to dismiss a case involving "primarily consumer debts" upon a finding that the granting of bankruptcy relief "would be a substantial abuse." *Kestell v. Kestell (In re Kestell),* 99 F.3d 146 (4th Cir.1996). In holding that a lump sum award from a divorce judgment was a "consumer debt," the Court stated that "since [the] debt was not incurred with a profit motive or in connection with a business transaction, it is considered 'consumer debt' for purposes of 707." *Id.* at 149.

With regard to the specific question of whether a tax debt can be considered a "consumer debt," the majority of courts that have considered the issue have concluded that a debt for unpaid *income taxes* is not in the nature of a "consumer debt" under § 101(8).[9] These courts reason that a tax liability is imposed, involuntarily, in the course of earning income, and not in any way that could be viewed as "consuming." *See In re Pressimone* 39 B.R. 240, 244–45 (N.D.N.Y.1984); *In re Reiter,* 126 B.R. 961, 964 (Bankr. W.D.Tex.1991). A minority of courts, on the other hand, have held or stated in dicta that a tax liability may constitute a consumer debt. *In re Bell,* 65 B.R. 575, 577 (Bankr. E.D.Mich.1986) (holding that test is whether debt is incurred for a business or profit seeking motive, as opposed to a personal, family, or household purpose, and treating debt owed to the Internal Revenue Service as a consumer debt); *Cambridge Machined Products Corp. v. United States,* 58 B.R. 22, 25 (Bankr.D.Mass.1985) (suggesting without explanation that the co-debtor stay in chapter 13 applies to tax debts, but that in chapter 11, the Anti–Injunction Act bars enjoining I.R.S. enforcement activities against the principals of the debtor).

### C.

The court has found no case addressing the precise issue before this court—that is, whether *personal property* taxes imposed by reason of the ownership of *consumer goods* constitute a consumer debt. A debt for personal property tax is clearly not a typical "consumer debt" in the sense, say, of credit card charges to purchase clothing or furniture or a bank loan to purchase a family automobile. Such taxes do, however, commonly arise as the predictable consequence of a consumer transaction—in this case, the purchase of a car for personal use. At the same time, such a tax does not fit neatly into the Fourth Circuit's definition of a consumer

9. *See, e.g., In re Pressimone* 39 B.R. 240, 244–45 (N.D.N.Y.1984); *In re Dye,* 190 B.R. 566, 567 (Bankr.N.D.Ill.1995); *In re Greene,* 157 B.R. 496, 497 (Bankr.S.D.Ga.1993); *In re Traub,* 140 B.R. 286 (Bankr.D.N.M.1992) (application under § 707(b)); *In re Gault,* 136 B.R. 736, 738 (Bankr. E.D.Tenn.1991); *Goldsby v. United States (In re Goldsby),* 135 B.R. 611, 613 (Bankr.E.D.Ark. 1992); *In re Reiter,* 126 B.R. 961, 964 (Bankr. W.D.Tex.1991); *Harrison v. Internal Revenue Service (In re Harrison),* 82 B.R. 557, 558 (Bankr. D.Colo.1987). The court notes, however, that motions seeking to enforce the co-debtor stay against collection activities of the Internal Revenue Service, raise an additional issue in terms of the applicability of 26 U.S.C. § 7421, usually referred to as the "Anti–Injunction Act." *See A to Z Welding and Manufacturing Co. v. United States,* 803 F.2d 932, 933 (8th Cir.1986); *In re Book,* 87 B.R. 54, 55 (Bankr.C.D.Ill.1988). The Anti–Injunction Act does not apply to state taxes, but an analogous statute, 28 U.S.C. 1341, provides similar, although more limited, protection to state taxing authorities. ("The district courts shall not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.") Fairfax County does not argue that 28 U.S.C. § 1341 is applicable to this case, however, and the court need not reach that issue.

debt. As noted above, the opinions in *Runski* and *Kestell* look to the *purpose* of the transaction giving rise to the debt. Both opinions assume a dichotomy in which there are only two kinds of debt, consumer and business. Put another way, neither opinion addresses whether debts exist which, although not "incurred with a profit motive or in connection with a business transaction," nevertheless fall outside the ambit of a consumer debt.

■ While the question is close, the court concludes that a debt for personal property tax is not a consumer debt even where the property being taxed is held for personal, family, or household use. Accordingly, the co-debtor stay of § 1301 would not apply to collection activities against the non-debtor owner of the property. Under § 101(8), a consumer debt is one that is "incurred"— implying that some voluntary action is taken before a consumer becomes liable on the debt. *See In re Marshalek,* 158 B.R. 704, 707 (Bankr.N.D.Ohio 1993). A tax, however, is not "incurred," but rather, is involuntarily imposed by a government for the public welfare. Such public purpose is sufficient, in the court's view, to take the debt outside the scope of a consumer debt. In this connection, the court notes that a tax is not the only kind of liability that falls into this "interstitial" area of debts that are not consumer debts, but yet are not business debts. *See* 6 Collier's on Bankruptcy ¶ 707.04(3)(c), at 707–19 (reasoning under § 707(b)).[10] Accordingly, the court denies the debtor's motion for sanctions for violation of the co-debtor stay.[11]

**10.** For specific examples of certain debts, see, e.g., *In re Marshalek,* 158 B.R. 704, 707 (Bankr. N.D.Ohio 1993) (civil judgment arising from a car accident not a "consumer debt"); *In re Venegas,* 73 B.R. 283, 285 (Bankr.D.P.R.1987) (professional fees are not a "consumer debt"); *In re Alvarez,* 57 B.R. 65, 66 (Bankr.S.D.Fla.1985) (tort liability arising from car accident not a "consumer debt"); *In re White,* 49 B.R. 869, 872 (Bankr.W.D.N.C.1985) (car accident liability not a "consumer debt"); *Brunswick Employees Credit Union v. Nenninger (In re Nenninger),* 32 B.R. 624, 625 (Bankr.W.D.Wisc.1983) (loan to purchase a commercial campground not a "consumer debt"); *Norman v. Norman (In re Norman),* 13 B.R. 894, 898 (Bankr.W.D.Mo.1981) (supersedeas bond not a "consumer debt").

**11.** The court need not reach the issue of whether, independently of the § 1301 co-debtor stay, this

### D.

A separate order will be entered consistent with this opinion.

court has the power under § 105, Bankruptcy Code to enjoin Fairfax County from attempting to collect the debt from Ms. Stovall so long as the debtor is current on his plan payments. *See, A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994 (4th Cir.1986), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (bankruptcy court could enjoin action against debtor's co-defendants in personal injury tort case where the interests of the co-defendants were so intertwined with those of the debtor that the suits could be regarded as a suit or claim against the debtor itself). Any such extension of the automatic stay would require the filing of an adversary proceeding and the satisfaction of the traditional requirement for an injunction. Fed. R.Bankr.P. 7001.